No. 24-1608

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Enbridge Energy, Limited Partnership; Enbridge Energy Company,
Inc., and Enbridge Energy Partners, L.P.,

     Plaintiffs-Appellees,

v.

Gretchen Whitmer, the Governor of the State of Michigan in her official
capacity, and Scott Bowen, Director of the Michigan Department of
Natural Resources,

     Defendants-Appellants.

Appeal from the United States District Court
Western District of Michigan, Southern Division
Honorable Robert J. Jonker

**BRIEF FOR DEFENDANTS-APPELLANTS**

Daniel P. Bock
Keith D. Underkoffler
Assistant Attorneys General
Counsel of Record
Attorney for Defendants-
Appellants
Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664

Dated: October 16, 2024

# TABLE OF CONTENTS

Page

Table of Authorities.................................................................. iii

Statement in Support of Oral Argument...............................viii

Jurisdictional Statement............................................................1

Statement of Issues Presented..................................................2

Introduction.................................................................................3

Statement of the Case ...............................................................6

    A.    The State of Michigan's sovereign ownership as trustee of Great Lakes bottomlands....................................................6

    B.    The 1953 Easement contract authorizing the Dual Pipelines in the Straits of Mackinac.......................................8

    C.    Recent litigation over the Dual Pipelines...............................9

        1.    *Nessel v. Enbridge* (the Attorney General's case) .......10

        2.    *Michigan v. Enbridge* (Michigan's case).......................12

        3.    *Enbridge v. Whitmer* (Enbridge's case) .......................15

    D.    The Michigan Officials' Motion to Dismiss...........................15

Standard of Review ...................................................................16

Summary of Argument..............................................................16

Argument.....................................................................................19

I.    This action is barred by the Eleventh Amendment because, like *Coeur d'Alene*, it is the functional equivalent of a quiet title action that interferes with Michigan's sovereign ownership and control of submerged lands, and therefore the State of Michigan is the real party in interest. ...........................22

A.    The facts of this case are materially indistinguishable from *Coeur d'Alene*. ............................................................ 22

B.    This case is the functional equivalent of a quiet title action against the State. ...................................................... 27

    1.    Enbridge claims title to the lands at issue via a prescriptive easement. ................................................. 31

    2.    Other federal courts have held that the Eleventh Amendment bars actions to enjoin state officials from enforcing state property rights and regulatory authority on state-owned land. .................. 34

C.    The relief that Enbridge seeks would interfere with Michigan's special sovereignty rights in submerged Great Lakes bottomlands. ...................................................... 36

II.    This action is barred by the Eleventh Amendment because it seeks to compel Michigan's specific performance of a contract, and therefore the State of Michigan is the real party in interest. .............................................................. 43

Conclusion and Relief Requested ............................................................ 51

Certificate of Compliance ...................................................................... 53

Certificate of Service ............................................................................. 54

Designation of Relevant District Court Documents ............................... 55

# TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. Adams,*
742 N.W.2d 399 (Mich. Ct. App. 2007) ............................................... 27

*Alden v. Maine,*
527 U.S. 706 (1999) ............................................................................ 19

*Arnett v. Myers,*
281 F.3d 552 (6th Cir. 2002) ................................................... 38, 39, 40

*Bad River Band of the Lake Superior Tribe of Chippewa Indians of
the Bad River Reservation v. Enbridge Energy Company, Inc., et
al.,*
626 F. Supp. 3d 1030 (W.D. Wis. 2022) ............................................. 45

*Bad River Band of the Lake Superior Tribe of Chippewa Indians of
the Bad River Reservation v. Enbridge Energy Company, Inc., et
al.,*
No. 19-cv-602-wmc, 2022 WL 17249085 (W.D. Wis. Nov. 28,
2022) ................................................................................................... 45

*Collins v. Gerhardt,*
211 N.W. 115 (Mich. 1926) ...................................................... 7, 18, 37

*DRFP L.L.C. v. Republica Bolivariana de Venezuela,*
622 F.3d 513 (6th Cir. 2010) .............................................................. 16

*Edelman v. Jordan,*
415 U.S. 651 (1974) ................................................................. 5, 43, 48

*Ex parte Young,*
209 U.S. 123 (1908) ................................................................... passim

*Ford Motor Co. v. Dep't of Treasury of Ind.,*
323 U.S. 459 (1945) ............................................................................ 26

*Franke v. Boyle*,
  No. 3:23-cv-00085, 2024 WL 229906 (D. Alaska 2024) ....................... 35

*Gavitt v. Born*,
  835 F.3d 623 (6th Cir. 2016) ................................................................ 8

*Georgia Railroad & Banking Co. v. Redwine*,
  342 U.S. 299 (1952) ................................................................... passim

*Glass v. Goeckel*,
  703 N.W.2d 58 (Mich. 2005) ...................................................... passim

*Great Lakes Gas Transmission Co. v. MacDonald*,
  485 N.W.2d 129 (1992) ................................................................ 27, 28

*Hagood v. Southern*,
  117 U.S. 52 (1886) ............................................................................. 43

*Hamilton v. Myers*,
  281 F.3d 520 (6th Cir. 2002) ............................................................. 39

*Hood Canal Sand and Gravel, LLC v. Brady*,
  No. C14–5620, 2014 WL 5421193 (W.D. Wash. 2014) ....................... 35

*Idaho v. Coeur d'Alene Tribe of Idaho*,
  521 U.S. 261 (1997) ................................................................... passim

*In re Ayers*,
  123 U.S. 443 (1887) ................................................................... passim

*Jackson v. City of Cleveland*,
  925 F.3d 793 (6th Cir. 2019) ............................................................. 29

*Jordon v. Gilligan*,
  500 F.2d 701 (6th Cir. 1974) ............................................................. 50

*Killips v. Mannisto*,
  624 N.W.2d 224 (Mich. Ct. App. 2001) ............................................. 27

*Lacano Investments, LLC v. Balash*,
  765 F.3d 1068 (9th Cir. 2014) ..................................................... 34, 35

iv

*Lavey v. Graessle,*
224 N.W. 436 (Mich. 1929) .................................................. 29

*Lessee of Pollard v. Hagan,*
3 How. 212 (1845) ............................................................... 37

*MacDonald v. Village of Northport,*
164 F.3d 964 (6th Cir. 1999) ......................................... 38, 41

*Marlette Auto Wash, L.L.C. v. Van Dyke SC Properties, L.L.C.,*
912 N.W.2d 161 (Mich. 2018) ............................................. 32

*Martin v. Lessee of Waddell,*
16 Pet. 367 (1842) .............................................................. 37

*Matthews v. Dep't of Nat. Res.,*
792 N.W.2d 40 (Mich. Ct. App. 2010) ................................ 32

*Mich. Bell Tel. Co. v. Climax Tel. Co.,*
202 F.3d 862 (6th Cir. 2000) ............................................. 20

*Morse v. Colitti,*
896 N.W.2d 15 (Mich. Ct. App. 2016) ................................ 30

*Nedtweg v. Wallace,*
208 N.W. 51 (Mich. 1926) ................................................ 6, 7

*Nessel v. Enbridge Energy, LP,*
104 F.4th 958 (6th Cir. 2024) ....................................... 14, 31

*Obrecht v. Nat'l Gypsum Co.,*
105 N.W.2d 143 (Mich. 1960) ................................... 7, 17, 37

*Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,*
429 U.S. 363 (1977) ........................................................... 37

*Papasan v. Allain,*
478 U.S. 265 (1986) ........................................................... 21

*Pavlock v. Holcomb,*
532 F. Supp. 3d 685 (N.D. Ind. 2021) ................................ 36

*Pennhurst State Sch. v. Halderman,*
465 U.S. 89 (1984) ............................................................21

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
506 U.S. 139 (1993) ...........................................................1

*Russell v. Lundergan-Grimes,*
784 F.3d 1037 (2015) ........................................................20

*Schadewald v. Brulé,*
570 N.W.2d 788 (Mich. Ct. App. 1997) .............................28

*Spotts v. U.S.,*
429 F.3d 248 (6th Cir. 2005) .............................................27

*State ex rel. Cates v. West Tennessee Land Co.,*
158 S.W. 746 (Tenn. 1913) ................................................39

*State v. Venice of Am. Land Co.,*
125 N.W. 770 (Mich. 1910) .................................................6

*Town of Smyrna v. Municipal Gas Auth. of Georgia,*
723 F.3d 640 (6th Cir. 2013) ..............................................1

*Utah Div. of State Lands v. United States,*
482 U.S. 193 (1987) ......................................................6, 36

*Va. Off. for Prot. & Advocacy v. Stewart,*
563 U.S. 247 (2011) ......................................20, 21, 25, 48

*Waterfront Commission of New York Harbor v. Murphy,*
961 F.3d 234 (3d Cir. 2020),
*cert. denied,* 142 S. Ct. 561 (2021)..........................48, 49, 50

*Western Mohegan Tribe and Nation v. Orange County,*
395 F.3d 18 (2d Cir. 2004)................................................35

*Whole Woman's Health v. Jackson,*
595 U.S. 30 (2021) ......................................................19, 20

*Yopek v. Brighton Airport Ass'n,*
997 N.W.2d 415 (Mich. Ct. App. 2022) .............................40

*Ysleta Del Sur Pueblo v. Laney,*
   199 F.3d 281 (5th Cir. 2000) ............................................................ 34

## Statutes

Mich. Comp. Laws § 324.1701................................................................ 10

Mich. Comp. Laws § 324.32502............................................................. 41

Mich. Comp. Laws § 600.2932............................................................... 27

## Rules

Fed. R. Civ. P. 12(b)(1) ........................................................................ 15

Fed. R. Civ. P. 12(b)(6) ........................................................................ 15

# STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellants Michigan Governor Gretchen Whitmer and Michigan Department of Natural Resources (DNR) Director Scott Bowen (collectively, the Michigan Officials) request oral argument to assist the Court in deciding the fundamental questions of federal subject-matter jurisdiction and state sovereignty at issue in this appeal.

The relief sought by Appellees (collectively, Enbridge) in this case would encumber the State of Michigan's ownership of, and jurisdiction over, submerged Great Lakes bottomlands and interfere with Michigan's ability to manage those lands in accordance with the public trust. Additionally, the relief requested would compel Michigan's specific performance of a contract. The Supreme Court has held that states are immune from both categories of suit in federal court under the Eleventh Amendment to the U.S. Constitution. But the District Court rejected the binding precedent on both issues and erroneously asserted federal subject-matter jurisdiction over this case.

Oral argument will assist the Court in considering the complex issues of state sovereign immunity, the exceptions thereto, and the limits of those exceptions.

# JURISDICTIONAL STATEMENT

This appeal arises from a July 5, 2024 Opinion and Order denying the Michigan Officials' motion to dismiss issued by Judge Robert J. Jonker in *Enbridge Energy, Limited Partnership, et al. v. Gretchen Whitmer, et al.*, No. 20-cv-01141, in the United States District Court for the Western District of Michigan.

The Michigan Officials argued below that the District Court lacked subject-matter jurisdiction and that Enbridge had failed to state a claim upon which relief could be granted because its claims were barred by Michigan's Eleventh Amendment sovereign immunity. The District Court's Opinion and Order denying that motion constitutes a collateral order which is immediately appealable to this Court. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–44 (1993); *Town of Smyrna v. Municipal Gas Auth. of Georgia*, 723 F.3d 640, 644–45 (6th Cir. 2013). The Michigan Officials timely filed their notice of appeal on July 19, 2024.

## STATEMENT OF ISSUES PRESENTED

1.    The Eleventh Amendment bars private parties from suing state officials in federal court if the relief sought "is the functional equivalent of a quiet title action which implicates special sovereignty interests," such as the state's "sovereign control over submerged lands." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281, 283 (1997). Here, Enbridge sued the Michigan Officials in federal court seeking declaratory and injunctive relief that would allow it to permanently use and occupy Michigan's submerged Great Lakes bottomlands, even if its use and occupancy violates the public trust doctrine and the terms of a 1953 Easement granted by the State of Michigan. Are Enbridge's claims barred by the Eleventh Amendment?

2.    The Eleventh Amendment bars private parties from suing state officials in federal court if the relief sought would compel the state's specific performance of a contract. *In re Ayers*, 123 U.S. 443, 502 (1887). Here, Enbridge sued the Michigan Officials in federal court seeking an injunction that would require the State of Michigan to specifically perform certain terms of the 1953 Easement contract that purportedly authorize Enbridge's use and occupancy of Michigan's submerged Great Lakes bottomlands. Are Enbridge's claims barred by the Eleventh Amendment?

# INTRODUCTION

This appeal arises from Enbridge's assertion that it has the right to permanently use and occupy Michigan's submerged Great Lakes bottomlands without Michigan's authorization, and that Michigan is powerless to do anything about it.

Enbridge owns and operates the Line 5 dual oil pipelines located on the submerged bottomlands of the Straits of Mackinac, where Lake Michigan and Lake Huron meet, between Michigan's Upper and Lower Peninsulas. These bottomlands are owned by the State of Michigan and held in trust for the public. Line 5 was located there pursuant to a 1953 Easement contract between the State and Enbridge's predecessor.

In 2020, the Michigan Officials notified Enbridge that Michigan was revoking and terminating the 1953 Easement because (1) it is legally invalid as it violates the public trust, and (2) Enbridge has repeatedly and incurably breached its terms.

Enbridge responded by suing the Michigan Officials in federal court, seeking a ruling that federal law preempts any action, including the revocation or termination of the 1953 Easement, that would

interfere with Enbridge's perpetual operation of the dual pipelines on the State-owned submerged lands.

But Enbridge's lawsuit is barred under the Eleventh Amendment to the U.S. Constitution. Its request for a federal court to rule that Michigan must endure a permanent, unauthorized use of its submerged lands—and may not revoke or terminate the 1953 Easement—strikes at the heart of Michigan's sovereign interests, infringes on Michigan's sovereign domain over submerged lands, and seeks to compel specific performance of the authorization in the 1953 Easement contract.

The District Court held to the contrary by relying on *Ex parte Young*, 209 U.S. 123 (1908), which permits parties to sue individual state officials in federal court for prospective declaratory and injunctive relief to abate ongoing violations of federal law. This was error. The Supreme Court has limited the *Ex parte Young* exception by holding that it does not apply where the relief sought is "the functional equivalent of a quiet title action which implicates special sovereignty interests," and has done so in a case specifically involving a state's sovereign ownership and control of submerged lake bottomlands. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281, 283 (1997). And the

4

Court has further held that the *Ex parte Young* exception does not apply in cases where the relief sought would compel a state's specific performance of a contract. *In re Ayers*, 123 U.S. 443, 502 (1887); *Edelman v. Jordan*, 415 U.S. 651, 666–67 (1974).

Both limitations apply here. The relief sought by Enbridge runs afoul of the *Coeur d'Alene* limitation because it is the functional equivalent of a state-law quiet title action, and because it would interfere with Michigan's sovereign ownership and control of its submerged Great Lakes bottomlands. Enbridge seeks a declaration and injunction that would allow it to permanently use and occupy these bottomlands regardless of whether it has Michigan's permission. Indeed, in a closely related case based on the same facts and law, Enbridge has actually advanced a claim for title to the bottomlands in question via a prescriptive easement.

And the relief sought by Enbridge runs afoul of *In re Ayers* because it would compel Michigan's specific performance of the 1953 Easement contract. Enbridge's alleged right to operate the dual oil pipelines on State-owned bottomlands arises, if at all, via contract. Enbridge seeks to enjoin the revocation and termination of that

contract, compelling the State of Michigan to perform its obligations under the contract in perpetuity—the very definition of specific performance.

This Court should reverse the District Court's decision and order that this case be dismissed for lack of jurisdiction.

## STATEMENT OF THE CASE

### A.  The State of Michigan's sovereign ownership as trustee of Great Lakes bottomlands

Upon its admission to the union in 1837, the State of Michigan acquired title to the land under navigable waters within its boundaries, including the bottomlands of the Straits of Mackinac, between Michigan's Upper and Lower Peninsulas.  *See, e.g.*, *Utah Div. of State Lands v. United States*, 482 U.S. 193, 195–96 (1987); *Nedtweg v. Wallace*, 208 N.W. 51, 52 (Mich. 1926).  The State holds the title to these lands "in its sovereign capacity" and "in trust for the people." *State v. Venice of Am. Land Co.*, 125 N.W. 770, 778–79 (Mich. 1910).

The Michigan Supreme Court has explained that the Michigan Officials are "sworn guardians of Michigan's duty and responsibility" to secure the public trust in these submerged bottomlands, *Obrecht v.*

*Nat'l Gypsum Co.*, 105 N.W.2d 143, 149 (Mich. 1960), and it has

underscored the importance of that sovereign duty:

> [U]nder longstanding principles of Michigan's common law,
> the state, as sovereign, has an obligation to protect and
> preserve the waters of the Great Lakes and the lands
> beneath them for the public. The state serves, in effect, as
> the trustee of public rights in the Great Lakes for fishing,
> hunting, and boating for commerce or pleasure. [*Glass v.
> Goeckel*, 703 N.W.2d 58, 64–65 (Mich. 2005) (cleaned up).]

"The state, as sovereign, cannot relinquish this duty to preserve

public rights in the Great Lakes and their natural resources." *Id.*;

*accord Nedtweg*, 208 N.W. at 53 ("The State may not, by grant,

surrender such public rights any more than it can abdicate the police

power or other essential power of government."). Instead, these public

rights are protected by a "high, solemn, and perpetual trust which it is

the duty of the State to forever maintain." *Collins v. Gerhardt*,

211 N.W. 115, 118 (Mich. 1926).

Indeed, "no part of the beds of the Great Lakes . . . can be

alienated or otherwise devoted to private use in the absence of due

finding of . . . exceptional reasons for such alienation or devotion to non-

public use." *Obrecht*, 105 N.W.2d at 149. Moreover, when the State of

Michigan conveys an interest in its submerged Great Lakes

bottomlands, "it necessarily conveys such property *subject to the public trust*." *Glass*, 703 N.W.2d at 65 (emphasis in original).

## B. The 1953 Easement contract authorizing the Dual Pipelines in the Straits of Mackinac

In 1953, the State of Michigan, through what was then known as the Conservation Commission (today, the DNR), purported to "convey[] and quit claim[]" an easement authorizing Enbridge's predecessor, the Lakehead Pipeline Company, "to construct, lay, maintain, use and operate two (2) pipe lines . . . over, through, under and upon [a] portion of the bottom lands of the Straits of Mackinac." (1953 Easement contract, R. 1-1, Page ID # 43–44.)[1] The dual pipelines constructed pursuant to that Easement became part of a 645-mile pipeline that runs from Superior, Wisconsin to Sarnia, Ontario, which is now owned by Enbridge and known as Line 5. (Compl., R. 1, Page ID # 4, ¶¶ 16–17.)

The 1953 Easement contract specified that the State of Michigan's grant of the right to use and occupy the submerged bottomlands was

---

[1] The Court may consider the 1953 Easement contract and the Notice of Revocation and Termination because they were attached to Enbridge's Complaint (R. 1-1, Page ID # 22–41) and are central to its claims. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

"subject to" certain express terms and conditions set forth therein, including that the Grantee must "at all times exercise the due care of a reasonably prudent person for the safety and welfare of all persons and of all public and private property" and comply with certain "minimum specifications, conditions and requirements," including that "[t]he minimum curvature of any section of pipe shall be no less than two thousand and fifty (2,050) feet radius," "[a]ll pipe shall be protected [with a specified coating and wrap]," and "[t]he maximum span or length of pipe unsupported shall not exceed seventy-five (75) feet." (*Id.* at Page ID # 45–47.) The 1953 Easement contract further states: "[t]he easement herein conveyed may be terminated by the Grantor . . . [i]f, after being notified in writing by Grantor of any specified breach of the terms and conditions of this easement, Grantee shall fail to correct said breach within ninety (90) days . . . ." (*Id.* at Page ID # 49.)

## C.     Recent litigation over the Dual Pipelines

In recent years, Michigan executive branch officials have challenged the validity of the 1953 Easement and the continued operation of the dual pipelines in the Straits of Mackinac. These challenges have led to three different lawsuits, which overlap

significantly in terms of the factual and legal issues. Some discussion of all three cases is required to provide the Court with a full understanding of the issues on appeal.[2]

### 1. *Nessel v. Enbridge* (the Attorney General's case)

The first lawsuit was filed by Michigan Attorney General Dana Nessel in Michigan state court on June 27, 2019. (Summons and Compl. 1:21-cv-1057, R. 1-1, Page ID # 19–63.) The Attorney General's complaint alleged three claims. Counts I.A. and I.B. asserted that the 1953 Easement is legally invalid because certain findings required to convey public trust bottomlands were never made and the continued operation of the 70-year-old dual pipelines in the Staits of Mackinac is not consistent with the public trust. (*Id.* at Page ID # 31–46.) Count II alleged that the dual pipelines constitute a public nuisance, and Count III alleged that they violate the Michigan Environmental Protection Act, Mich. Comp. Laws § 324.1701 *et seq.* (*Id.* at Page ID # 46–48.)

---

[2] Unless otherwise indicated, all record citations in this brief refer to the District Court record in this case. Where record citations refer to the parallel cases of *Nessel v. Enbridge* and *Michigan v. Enbridge*, the relevant District Court docket number is included.

The Attorney General's complaint was necessitated by the serious risk of a catastrophic release of oil from Line 5 into the Straits, and the profound effects this would have on Michigan's residents, economy, and natural resources. (*Id.* at Page ID # 34–42.) The complaint noted that another Enbridge pipeline, Line 6b, had caused a major release of oil into Michigan's inland waters in 2010, and that Line 5 had been struck and significantly damaged by a 12,000-pound anchor that was accidentally deployed in the Straits by an industrial barge in 2018. (*Id.*) Based in part on these facts, the complaint alleged that the continued operation of Line 5 in the Straits of Mackinac posed an unacceptable and unauthorized risk to the public. (*Id.* at Page ID # 44–46.)

On September 16, 2019, the Attorney General and Enbridge filed cross-motions for summary disposition, which were extensively briefed and argued over the next several months. (*See* Register of Actions, 1:21-cv-1057 R. 11-1, Page ID # 308, 312–13, 315, 317.) Enbridge argued that the Attorney General's claims were preempted by federal law, including the federal Pipeline Safety Act and the federal Submerged Lands Act. (Enbridge's Mot., 1:21-cv-1057 R. 11-2, Page ID # 362–369; Hr'g Tr., 1:21-cv-1057 R. 11-4, Page ID # 469–480;

Enbridge's Supp. Br., 1:21-cv-1057 R. 11-5, Page ID # 519–528.) And, of particular significance to this appeal, Enbridge argued that it did not matter whether the 1953 Easement was legally valid because Enbridge held title to the Straits bottomlands at issue via a prescriptive easement. (Enbridge's Mot., 1:21-cv-1057 R. 11-2, Page ID # 353–356.)

The parties' cross-motions for summary disposition have been pending for approximately four years, but they have not yet been decided because Enbridge improperly removed the case to federal court. The District Court denied the Attorney General's motion to remand the case to state court, but this Court recently reversed and ordered that the case be remanded. The parties' cross-motions are now ripe for decision by the Michigan state court.

### 2. *Michigan v. Enbridge* (Michigan's case)

On the same date that the Attorney General's lawsuit was filed, Michigan Governor Gretchen Whitmer "directed the DNR to undertake a comprehensive review of Enbridge's compliance with the 1953 Easement." (Notice, R. 1-1, Page ID # 23.) Following that review, the State of Michigan, as grantor of the 1953 Easement, issued a Notice of Revocation and Termination of Easement (Notice) to Enbridge on

November 13, 2020, which was signed by the Michigan Officials. (R. 1-1, Page ID # 22–41.)

The Notice revoked the 1953 Easement for the same reasons that the Attorney General had asserted the easement was invalid: because essential findings required to convey public trust bottomlands were not made and the continued operation of Line 5 in the Straits of Mackinac violates the public trust. (*Id*. at Page ID # 25–30.) The Notice also terminated the 1953 Easement contract, pursuant to its termination provision, because Enbridge had committed numerous, incurable violations of the contract's terms and conditions. (*Id*. at Page ID # 33–40.) The Notice directed Enbridge to cease operating the dual pipelines in the Straits of Mackinac within 180 days and then to decommission them. (*Id*. at Page ID # 41.)

After issuing the Notice, the State of Michigan and the Michigan Officials filed a lawsuit in Michigan state court seeking to enforce it. (1:20-cv-1142, R. 1-1, Page ID # 26–27.) The Michigan Officials' expectation was that their case would be consolidated with the Attorney General's case, in which the parties were awaiting decision on their cross-motions for summary disposition.

On November 24, 2020, however, Enbridge removed Michigan's case to the District Court. (Notice of Removal, 1:20-cv-1142, R. 1-2, Page ID # 116–123.) The State of Michigan and the Michigan Officials filed a motion to remand their case to state court so that it could be consolidated with the Attorney General's case, but the District Court denied the motion on November 16, 2021. (1:20-cv-1142, Op. & Order, R. 80.) The State of Michigan and the Michigan Officials then voluntarily dismissed their case in order to allow the Attorney General's case against Enbridge to proceed in state court without a forum battle or a race to judgment between the state court and the District Court. (Notice of Voluntary Dismissal, 1:20-cv-1142, R. 83.)

At that point, Enbridge removed the Attorney General's case to the District Court, despite the fact that the removal deadline had passed approximately two-and-a-half years prior. (Notice of Removal, 1:21-cv-1057 R. 1.) On June 17, 2024, this Court held that Enbridge's notice of removal was improper and ordered that the Attorney General's case be remanded back to state court. *Nessel v. Enbridge Energy, LP*, 104 F.4th 958 (6th Cir. 2024). The case is now back before the state court after an approximately four-year hiatus.

### 3. *Enbridge v. Whitmer* (Enbridge's case)

Enbridge filed this separate case against the Michigan Officials in the District Court on November 24, 2020.  (Compl., R. 1.)  Enbridge's Complaint seeks a declaration that Michigan's Notice (which Enbridge calls a "Shutdown Order") is unconstitutional and otherwise preempted by the same federal laws that it asserted as preemption defenses in the Attorney General's case.  (*See id*. at Page ID # 10–18.)  Enbridge also seeks an injunction prohibiting the Michigan Officials from "taking any steps to impede or prevent the interstate and international operation of Line 5, including the revocation or termination of the 1953 easement."  (*Id*. at Page ID # 19.)

### D. The Michigan Officials' Motion to Dismiss

On January 18, 2022, the Michigan Officials moved to dismiss Enbridge's lawsuit pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the grounds that Michigan's Eleventh Amendment sovereign immunity bars Enbridge's claims from proceeding in federal court without the State's consent.  (Mot. & Br., R. 62, 63.)  The Michigan Officials argued that the *Ex parte Young* exception to state sovereign immunity does not apply because the relief requested by Enbridge is the functional

equivalent of a quiet title action, would interfere with Michigan's sovereign ownership and control over its submerged lake bottomlands, and would compel Michigan's specific performance of the 1953 Easement contract. (Br., R. 63, Page ID # 337–348; Reply Br., R. 76, Page ID # 628–640.)

On July 25, 2024, the District Court issued an Opinion and Order denying the Michigan Officials' motion to dismiss. (Op. & Order, R. 94.) It is from this decision that the Michigan Officials now appeal.

## STANDARD OF REVIEW

This Court reviews questions of subject-matter jurisdiction, including issues of sovereign immunity, de novo. *DRFP L.L.C. v. Republica Bolivariana de Venezuela*, 622 F.3d 513, 515 (6th Cir. 2010).

## SUMMARY OF ARGUMENT

In this case, Enbridge seeks to invoke the federal judicial power to curtail the State of Michigan's sovereign ownership and control over its own submerged lands. Under black-letter law, such a lawsuit may not proceed in federal court without the State's consent.

While Enbridge styles its complaint as seeking declaratory and injunctive relief against the Michigan Officials, that is nothing more than artful pleading. The true nature of the relief Enbridge seeks is an order declaring that (1) Enbridge may permanently use and occupy State-owned Great Lakes submerged lands without regard for whether it has permission from the State as sovereign landowner; and (2) the State must specifically perform the terms of a contract.

These claims strike at the heart of Michigan's sovereignty. Michigan, as sovereign owner of the submerged lands at issue, decides whether, and under what circumstances, others may use and occupy its land. But the relief Enbridge seeks, if granted, would strip away that sovereign authority and compel Michigan to allow a party that it views as a trespasser to remain on its land. And the lands at issue are not ordinary lands; rather, the Supreme Court has long recognized that submerged lands which underlie navigable waters are of particular significance to state sovereignty. *See Coeur d'Alene*, 521 U.S. at 289.

Indeed, these lands are imbued with the public trust, which means they belong to the public at large and are managed by the State for the benefit of the public. *See Glass*, 703 N.W.2d at 64–65; *Obrecht*,

105 N.W.2d at 149; *Collins*, 211 N.W. at 118. By seeking a court-ordered right to permanently use and occupy them without Michigan's consent, Enbridge is effectively seeking to quiet title to an easement over its submerged lands. An order granting the requested relief would operate against the State of Michigan itself, and not against the named Michigan Officials, by encumbering Michigan's title. As a result, "[t]he dignity and status of its statehood allow [Michigan] to rely on its Eleventh Amendment immunity and to insist upon responding to [Enbridge's] claims in its own courts, which are open to hear and determine the case." *Coeur d'Alene*, 521 U.S. at 287–88.

Additionally, the Eleventh Amendment bars federal court actions seeking to compel a state's specific performance of a contract. *In re Ayers*, 123 U.S. at 502. Enbridge tries to avoid that limitation by arguing that it only seeks to prevent the Michigan Officials from committing an ongoing violation of federal law, which also happens to incidentally require the State of Michigan's specific performance of its obligations under the 1953 Easement contract. But, once again, that is transparent artful pleading. The act that Enbridge seeks to enjoin is Michigan's termination and revocation of the contract. Simply put,

asking a federal court to enjoin a party from ceasing to perform its contract obligations is a claim for specific performance.

The District Court's decision to exercise federal jurisdiction over Enbridge's claims undermines Michigan's state sovereign immunity and transgresses the limits imposed by the Eleventh Amendment. It should be reversed.

## ARGUMENT

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). The Supreme Court has explained that the doctrine protects the "dignity and respect afforded a State" in our federal system, *Coeur d'Alene*, 521 U.S. at 267–68,[3] and is both evidenced by the text of the Eleventh Amendment and "implicit in the constitutional design," *Alden v. Maine*, 527 U.S. 706, 729 (1999). This Circuit recognizes the Eleventh Amendment as a "true jurisdictional bar" that "deprives federal courts

---

[3] Except as otherwise noted, all *Coeur d'Alene* citations refer to Parts I, II-A, and III of the opinion, which constitute a binding majority opinion. Where a citation refers to a separate opinion not joined by a majority of the Court, that is indicated in the text or through a parenthetical.

of subject-matter jurisdiction." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (2015).

The *Ex parte Young* doctrine, on which Enbridge relies, operates as a "narrow exception" to the general rule of sovereign immunity. *Whole Woman's Health*, 595 U.S. at 39; *see also Mich. Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 867 (6th Cir. 2000). The exception "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted). However, "[t]he doctrine is limited to that precise situation, and does not apply when the state is the real, substantial party in interest, as when the judgment sought would expend itself on the public treasury or domain, or interfere with public administration." *Id.* (cleaned up).

Importantly, "the real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading." *Coeur d'Alene*, 521 U.S. at 270. Thus, rather than reflexively relying "on an obvious fiction" and permitting "a

federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer," *id.*, courts must examine "the *effect* of the relief sought" and determine whether the suit "is in fact against the sovereign," *Stewart*, 563 U.S. at 256 (quoting *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 107 (1984)). Stated otherwise, the application of *Ex parte Young* "must reflect a proper understanding of its role in our federal system and respect for state courts." *Coeur d'Alene*, 521 U.S. at 270. Even if a case "formally meet[s] the *Young* requirements," it may still be barred if it "would stretch that case too far and would upset the balance of federal and state interests that it embodies." *Papasan v. Allain*, 478 U.S. 265, 277 (1986).

This case sits at the intersection of two lines of precedent where the narrow *Ex parte Young* fiction does not apply. First, it falls within the *Coeur d'Alene* limitation because it infringes on the sovereignty of the State of Michigan by effectively seeking a prescriptive easement over State-owned submerged lands held in public trust. Second, it falls within the limitation established in *In re Ayers* because it effectively seeks to require the State of Michigan to specifically perform a contract.

I. **This action is barred by the Eleventh Amendment because, like *Coeur d'Alene*, it is the functional equivalent of a quiet title action that interferes with Michigan's sovereign ownership and control of submerged lands, and therefore the State of Michigan is the real party in interest.**

In *Coeur d'Alene*, the Supreme Court held that the Eleventh Amendment bars federal courts from hearing claims for injunctive and declaratory relief against state officials where the requested relief is "close to the functional equivalent of quiet title" and implicates a State's "special sovereignty interests" in submerged lands. 521 U.S. at 281, 283. Enbridge's claims against the Michigan Officials are on all fours with the plaintiffs' claims against the Idaho officials in *Coeur d'Alene* because they are the functional equivalent of a quiet title action, and they implicate Michigan's special sovereignty interest in its submerged lands. Therefore, they are barred by the Eleventh Amendment.

A. **The facts of this case are materially indistinguishable from *Coeur d'Alene*.**

The relief sought by Enbridge in this case is a declaration that federal law preempts the Michigan Officials from taking any action to enforce Michigan's sovereign rights as the owner and trustee of the Straits bottomlands. (Compl., R. 1, Page ID # 18–19.) This is virtually identical to the relief sought by the plaintiff in *Coeur d'Alene*.

The plaintiffs in *Coeur d'Alene* brought multiple claims. They asserted title to the bottomlands of Lake Coeur d'Alene pursuant to federal law, and also brought separate claims seeking exactly what Enbridge seeks here: declaratory and injunctive relief against specific Idaho officials to prevent them from enforcing Idaho's ownership rights or any Idaho laws that would allegedly violate their federal rights. *Coeur d'Alene*, 521 U.S. at 265.

Similarly, in this case, Enbridge seeks a declaration that federal law preempts the Michigan Officials from enforcing the terms of the 1953 Easement contract or any Michigan laws that would interfere with its alleged federal rights in Great Lakes bottomlands, and an injunction preventing them from doing the same. (Compl., R. 1, Page ID # 19.)

The defendants in *Coeur d'Alene* moved to dismiss the complaint based on Idaho's Eleventh Amendment sovereign immunity, just like the Michigan officials did here. *Coeur d'Alene*, 521 U.S. at 265. The district court dismissed the complaint in its entirety. *Id*. at 265–66. The Ninth Circuit reversed as to the plaintiffs' claims for declaratory and injunctive relief against the named Idaho officials, reasoning, as the District Court did here, that the plaintiffs could pursue those claims

under *Ex parte Young* "insofar as they sought to preclude ongoing violations of federal law." *Id.*

The Supreme Court reversed, concluding that although the claims were nominally against individual state officials for prospective relief under *Ex parte Young*, they were nonetheless barred by the Eleventh Amendment. *Id.* at 281. The Court explained that state sovereign immunity ordinarily prevents plaintiffs from "maintain[ing] a quiet title suit against [a State] in federal court, absent the State's consent." *Id.*; *see also id.* at 289 (O'Connor, J. concurring) ("A federal court cannot summon a State before it in a private action seeking to divest the State of a property interest."). And, although the plaintiffs' claims were pled to avoid that doctrine, seeking declaratory and injunctive relief to prevent the Idaho officials from exercising Idaho's ownership rights and regulatory powers in its submerged lake bottomlands was "close to the functional equivalent" of a quiet title action against Idaho itself. *Id.* at 282–84. The Supreme Court recognized that pursuing such claims implicated "special sovereignty interests," *id.* at 281, because the lands at issue were submerged lake bottomlands that are "tied in a unique way to sovereignty." *Id.* at 283–87.

The same analysis holds true here. While Enbridge has styled its Complaint as seeking to prevent the Michigan Officials from interfering with the operation of Line 5, that is nothing more than artful pleading. Relying on the way Enbridge has captioned its case it would reduce *Ex parte Young* to an "empty formalism," which the Supreme Court has rejected. *Id.* at 521 U.S. at 270. Instead, courts must be "willing to police abuses of the [*Ex parte Young*] doctrine that threaten to evade sovereign immunity" by determining whether "the *effect* of the relief sought" makes the State itself the real, substantial party in interest. *Stewart*, 563 U.S. at 256 (citation omitted).

Here, the relief requested would prevent Michigan, as sovereign owner of the lands in question and grantor of the 1953 Easement, from enforcing the terms of the Easement contract or its other sovereign ownership rights over the submerged lands at issue. (Compl., R. 1, Page ID # 18–19, ¶¶ 1(b), (2).) And it would prevent Michigan, as the state with regulatory police powers over those bottomlands and the solemn duty to administer the public trust, from exercising those powers and otherwise enforcing Michigan law. (*Id.*) As Justice O'Connor stated in the concurring opinion in *Coeur d'Alene*: "We have

25

repeatedly emphasized the importance of sovereign lands to state sovereignty. Control of such lands is critical to a State's ability to regulate use of its navigable waters . . . . Whatever distinction can be drawn between possession and ownership of real property in other contexts, it is not possible to make such a distinction for submerged lands." *Id.* at 289–91. Under these circumstances, the State of Michigan itself is clearly the real, substantial party in interest.

In holding otherwise, District Court did not consider "the essential nature and effect of [this] proceeding." *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 465 (1945). Rather, it accepted Enbridge's artful pleading at face value and purported to distinguish this case from *Coeur d'Alene* on three grounds: that Enbridge's Complaint (1) "asserts no title rights"; (2) "does not seek exclusive use of the bottomlands of the Straits or any other property Michigan claims to own"; and (3) does not "seek any kind of sweeping relief invalidating all Michigan statutes, ordinances, regulations, customs, or usages which purport to regulate, authorize, use, or to affect in any way the submerged lands." (Op. & Order, R. 94, Page ID # 945 (internal quotation marks omitted).) But the District Court was mistaken

because, for all practical purposes, those items are exactly what Enbridge seeks.

## B.    This case is the functional equivalent of a quiet title action against the State.

An action to quiet title is an action in which the plaintiff claims title to, interest in, or a right to possess land.  *Adams v. Adams*, 742 N.W.2d 399, 404 (Mich. Ct. App. 2007).  Quiet title actions against non-federal defendants are brought under state law.  *See Spotts v. U.S.*, 429 F.3d 248, 251 (6th Cir. 2005) (holding that a party's interest in real property is determined under state law); Mich. Comp. Laws § 600.2932 (state statute governing quiet title actions).

Michigan law is clear that a complaint to quiet title may claim an interest in real property less than fee simple ownership; specifically, an action claiming a right to use the land of another for a specific purpose is a claim to quiet title.  *Killips v. Mannisto*, 624 N.W.2d 224, 225–27 (Mich. Ct. App. 2001).  Indeed, when a pipeline company seeks to establish a right to construct, operate, and maintain a pipeline on the landowner's property, *that action sounds in quiet title*.  *Great Lakes Gas Transmission Co. v. MacDonald*, 485 N.W.2d 129 (1992).  There is no

question that Enbridge could have pursued its claims in state court via a quiet title action against the State, as landowner, just as the pipeline company did in *Great Lakes Gas Transmission Co.*

But the Eleventh Amendment bars such actions in federal court, absent the State's consent. *Coeur d'Alene*, 521 U.S. at 281–82; *id.* at 289 (O'Connor, J. concurring) ("A federal court cannot summon a State before it in a private action seeking to divest the State of a property interest."). And a party may not evade this prohibition by suing state officials for declaratory and injunctive relief if the relief sought is "the functional equivalent of a quiet title action," particularly where it seeks to establish rights to state-owned submerged lands. *Id.* at 281, 283. Yet, that is exactly what Enbridge seeks to do here.

The operation of a pipeline across the Straits bottomlands is a trespass on State land unless the operator holds a valid easement or license of some kind. *See, e.g.*, *Schadewald v. Brulé*, 570 N.W.2d 788, 794, 796 (Mich. Ct. App. 1997) (explaining that "[a]n easement is the right to use the land of another for a specified purpose" and activities that exceed "the use granted by the easement may constitute

a trespass").  Enbridge has no such entitlement, beyond the 1953 Easement it purports to hold.

The Notice issued by the State of Michigan informed Enbridge that its Easement is invalid, and that Michigan was terminating the Easement as a remedy for Enbridge's repeated and incurable breaches. (R. 1-1, Page ID # 22–41.)  At bottom, then, this dispute is about a landowner notifying a trespasser that it had no permission to occupy certain property and must vacate it.  By seeking to challenge "the revocation or termination of the 1953 Easement" in federal court, Enbridge seeks a federal court ruling that the State of Michigan is prohibited from removing an encumbrance on State-owned lands.  *See Lavey v. Graessle*, 224 N.W. 436, 437 (Mich. 1929) ("A right to an easement of any kind is an incumbrance.").  Simply put, this is a quiet title action dressed up in *Ex parte Young* clothing.[4]

_____

[4] At various points in its District Court briefing, Enbridge seemed to imply that it was challenging something other than the revocation and termination of the 1953 Easement.  It is not, and in fact could not be. The only act the Michigan Officials have taken which can be enjoined here is signing and issuing the Notice, which was attached to Enbridge's Complaint and forms the basis of its claims.  Enbridge cannot ask a federal court to enjoin any other hypothetical future action—such a claim would not be ripe, and thus not justiciable.  *See Jackson v. City of Cleveland*, 925 F.3d 793, 807 (6th Cir. 2019) ("A claim

Throughout its briefing in the District Court, Enbridge claimed (and doubtlessly will claim again in this Court) that it does not challenge the State's ownership of the submerged lands at issue. (Enbridge's Resp. Br., R. 74, Page ID # 576 ("Enbridge does not claim ownership or control over the land in question"); *id.* at Page ID # 583 ("Enbridge seeks no ownership interest in the Strait's bottomlands and in fact does not challenge that the State owns the bottomlands"), *id.* at Page ID # 587 ("Enbridge claims no ownership over the submerged lands on which its pipeline rests and does not seek to extinguish any property right of the State in those lands.").)

But Enbridge ignores that it was not the claim to title the Supreme Court found barred *Coeur d'Alene*; rather, it was the claim for declaratory and injunctive relief against state officials, which is exactly what Enbridge seeks here. And while Enbridge may not be seeking fee simple ownership of the State's bottomlands, it *is* claiming a property interest in them. *See, e.g.*, *Morse v. Colitti*, 896 N.W.2d 15, 22 (Mich. Ct. App. 2016) ("[A]n easement is a property interest.").

———————————

is unripe when it is anchored in future events that may not occur as anticipated, or at all." (cleaned up)).

Enbridge's attempt to cloak its claim for possession and control of Michigan's submerged lands in the veil of *Ex parte Young* is also belied by two facts: (1) in the closely related case of *Nessel v. Enbridge* (the Attorney General's case), Enbridge has literally asserted title to the bottomlands at issue via a prescriptive easement, revealing the true nature of the relief it seeks; and (2) at least three other Circuits and multiple District Courts have interpreted *Coeur d'Alene* to mean that the Eleventh Amendment bars similar suits against state officials.

### 1. Enbridge claims title to the lands at issue via a prescriptive easement.

As noted above, Michigan's Attorney General has sued Enbridge to challenge the validity of the 1953 Easement. *See Nessel*, 104 F.4th 958. The Attorney General's claims are substantively identical to those relied on by the State of Michigan to revoke the 1953 Easement. (Notice, R. 1-1, Page ID # 25–30.) Enbridge itself has argued that the two cases are "nearly identical, involving overlapping questions of law and fact, and the same parties or privies." (Enbridge's App. Br., 6th Cir. Case No. 23-1671, Doc. No. 38, p. 34.) And, in the Attorney General's case, Enbridge raises the exact same preemption defenses

that form the basis of its Complaint here:  that seeking to invalidate the Easement contract is preempted by three federal laws—a 1977 Treaty between the United States and Canada, the Pipeline Safety Act, and the Submerged Lands Act.  (*Id.* at 16, 35–48, 54.)

In the same dispositive motion in which it first raised these federal preemption defenses, Enbridge also claimed that it owns a prescriptive easement over the Straits bottomlands.  (Enbridge's Mot., 1:21-cv-01057 R. 11-2, Page ID # 353–56.)  As set forth above, that motion—including Enbridge's claim for prescriptive easement—is still pending in state court, awaiting a final decision.

Under Michigan law, a claim or defense asserting the right to occupy another's property based on a prescriptive easement *is a claim of title*.  "The party claiming a prescriptive easement is vested with title to the land upon the expiration of the period of limitations, and this title is good against the former owner and against third parties."  *Matthews v. Dep't of Nat. Res.*, 792 N.W.2d 40, 48 (Mich. Ct. App. 2010) (cleaned up); *see also Marlette Auto Wash, L.L.C. v. Van Dyke SC Properties, L.L.C.*, 912 N.W.2d 161, 168 (Mich. 2018) ("When a prescriptive easement vests

. . . the easement is appurtenant and transfers to subsequent owners in the property's chain of title . . . .").

In other words, despite Enbridge's protestations that this case is not close to the functional equivalent of a quiet title action, and that it does not challenge Michigan's ownership of its submerged lands, Enbridge *currently has an active claim to title in the submerged lands at issue* in a parallel case based on the exact same arguments that it raises in this case. And not just any parallel case, but a case that Enbridge itself has described as *nearly identical* to this case. (Enbridge's App. Br., 6th Cir. Case No. 23-1671, Doc. No. 38, p. 34.)

Enbridge's efforts to distinguish this case from *Coeur d'Alene* are belied by its claims in the Attorney General's case. It openly asserts title to the State's bottomlands in that case, while attempting to conceal the true nature of its claims to those same bottomlands in this case through artful pleading. This is precisely what the Supreme Court cautioned against in *Coeur d'Alene*. The District Court erred when it accepted Enbridge's artifice at face value and failed to recognize that Enbridge's claims run directly against the State and its sovereign title to Great Lakes submerged lands. This Court should correct that error.

## 2. Other federal courts have held that the Eleventh Amendment bars actions to enjoin state officials from enforcing state property rights and regulatory authority on state-owned land.

Enbridge is not the first plaintiff to attempt an end-run around the Eleventh Amendment by casting its claims against a state as claims for injunctive relief against state officials.

At least three other Circuits and multiple District courts have held that the Eleventh Amendment bars similar actions. For example, in *Lacano Investments, LLC v. Balash*, 765 F.3d 1068 (9th Cir. 2014), the plaintiffs sued to enjoin Alaska state officials from enforcing state ownership rights to submerged lands on grounds that such actions were preempted by the federal Submerged Lands Act—one of the very federal laws that Enbridge invokes here. The Ninth Circuit held that the action was barred under the Eleventh Amendment because it "implicate[d] precisely the same sovereignty interests as in *Coeur d'Alene.*" *Id.* at 1073. Similarly, in *Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281, 289 (5th Cir. 2000), the Fifth Circuit found that an action for declaratory and injunctive relief against Texas state officials was barred because "an action to put a plaintiff in possession of real property held by the state is a quiet title action forbidden by the

Eleventh Amendment . . . a federal court does not have the power to adjudicate the State's interest in property without the State's consent." (cleaned up). And in *Western Mohegan Tribe and Nation v. Orange County*, 395 F.3d 18, 23 (2d Cir. 2004), the Second Circuit interpreted *Coeur d'Alene* to bar a complaint against New York officials seeking a declaration that New York's exercise of fee title was subject to plaintiff's rights under federal law.

Decisions from numerous District courts are in accord. *See, e.g.*, *Hood Canal Sand and Gravel, LLC v. Brady*, No. C14–5620, 2014 WL 5421193 at *4 (W.D. Wash. 2014) ("[Plaintiff] seeks declaratory and injunctive relief that would prevent the State from enforcing the easement . . . . [Plaintiff's] requested relief would therefore prevent the State's officers from exercising their authority over the bedlands . . . . Indeed, [Plaintiff's] suit 'implicates the exact issues of *Coeur d'Alene* itself, namely . . . the state's control over submerged lands.'" (quoting *Lacano*, 765 F.3d at 1074) (emphasis added)); *Franke v. Boyle*, No. 3:23-cv-00085, 2024 WL 229906 at *3, *7 (D. Alaska 2024) (recognizing that "[a] federal court cannot summon a State before it in a private action to divest the State of a property interest" and holding that because "the

relief Plaintiffs seek would invalidate the State's section line easements" the suit was "the functional equivalent of a quiet title action which implicates special sovereignty interests" and thus was barred under *Coeur d'Alene*); *Pavlock v. Holcomb*, 532 F. Supp. 3d 685, 693–94 (N.D. Ind. 2021), *aff'd as modified* 35 F.4th 581 (interpreting *Coeur d'Alene* to bar action by private landowners against Indiana officials under to prevent the enforcement of a property boundary line).

The claims raised by Enbridge here are strikingly similar, and in some cases virtually identical, to the claims rejected by the Second, Fifth, and Ninth Circuits, as well as numerous district courts. This Court should join those courts in rejecting them.

## C. The relief that Enbridge seeks would interfere with Michigan's special sovereignty rights in submerged Great Lakes bottomlands.

The submerged bottomlands of navigable lakes hold a special character. As the Supreme Court recognized in *Coeur d'Alene*, "lands underlying navigable waters have historically been considered 'sovereign lands.' State ownership of them has been 'considered an essential attribute of sovereignty.'" 521 U.S. at 283 (quoting *Utah Div. of State Lands v. United States*, 482 U.S. 193, 195–98 (1987)).

This is because "the people of each of the Thirteen Colonies at the time of independence 'became themselves sovereign; and in that character hold the absolute right to all their navigable waters and the soils under them for common use, subject only to the rights surrendered by the Constitution to the general government." *Id*. (quoting *Martin v. Lessee of Waddell*, 16 Pet. 367, 410 (1842)). States that entered the union after the original Thirteen Colonies "did so on an 'equal footing' with the original States and so have similar ownership over these 'sovereign lands.'" *Id*. (*quoting Lessee of Pollard v. Hagan*, 3 How. 212 (1845)). "In consequence of this rule, a State's title to these sovereign lands arises from the equal footing doctrine and is 'conferred not by Congress but by the Constitution itself.'" *Id*. (quoting *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 374 (1977)).

This special sovereign ownership is infused with the public trust, which is the state's obligation to protect and maintain navigable waters and the lands beneath them for the benefit of the public. *See Glass*, 703 N.W.2d at 64–65; *Obrecht*, 105 N.W.2d at 149; *Collins*, 211 N.W. at 118.

This Court has recognized the significance of Michigan's sovereign interest in Great Lakes submerged lands and its obligation to administer the public trust, even where the relief requested was far less offensive to Michigan's sovereignty than the relief sought by Enbridge. In *MacDonald v. Village of Northport*, 164 F.3d 964, 966–67 (6th Cir. 1999), a plaintiff brought *Ex parte Young* claims seeking relief that would have vacated a public right-of-way providing access to a public beach on Lake Michigan. This Court held that the *Ex parte Young* claims were barred by *Coeur d'Alene*, even though ownership of the submerged lands was not at issue, reasoning that "[b]ecause the state of Michigan has a great interest in maintaining public access to the Great Lakes, the . . . relief requested implicated special sovereignty interests." *Id.* at 972 (cleaned up). Here, the case for applying *Coeur d'Alene* is even stronger, since the Easement at issue pertains not only to *access* to the Great Lakes, but the right to use and occupy lakebeds reserved to the State by the Constitution.

Before the District Court, Enbridge relied heavily on *Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002). But that case is readily distinguishable because it did not implicate special sovereignty

interests at all.  The lands at issue in *Arnett* were not submerged at the time Tennessee became a state, and thus ownership never passed to the state under the Equal Footing doctrine.  *Id.* at 557 & n.1.  Instead, most of the then-unsubmerged lands were privately owned under the "Doherty grant," which conveyed ownership of them before Tennessee joined the union.  *Id.*  In 1810, an earthquake caused the lake to form over portions of the former Doherty lands.  *Id.*  Under these unusual circumstances, the Tennessee Supreme Court held that Tennessee's special sovereignty interests in lake bottomlands did not extend to former Doherty lands.  *See id.* (citing *State ex rel. Cates v. West Tennessee Land Co.*, 158 S.W. 746, 752 (Tenn. 1913)); *see also Hamilton v. Myers*, 281 F.3d 520, 527–28 (6th Cir. 2002) (companion case to *Arnett* that describes this history in detail).

Thus, in *Arnett*, the only issue "implicating the State of Tennessee's regulatory authority" was whether the plaintiffs owned certain property pursuant to a Doherty land grant.  If the lands at issue were former Doherty lands, then plaintiffs held "[e]xclusive riparian fishing rights" over those lands, as had "already been affirmatively established by the Supreme Court of Tennessee."  *See id.* at 567–68.  In

other words, the plaintiffs did not seek any relief that would burden submerged lands owned by the State; rather, they merely sought to exercise their private riparian fishing rights on lands that had never entered the State's domain. *Id.* Under those circumstances, this Court correctly held that *Coeur d'Alene* did not apply.

Here, by contrast, Enbridge's claims pertain to Great Lakes submerged lands owned by Michigan, and strike at the heart of Michigan's sovereignty interest in those lands. As sovereign owner, Michigan has the legal right to grant easements setting the terms and conditions under which others may use or occupy the lands at issue. *See, e.g.*, *Yopek v. Brighton Airport Ass'n*, 997 N.W.2d 415, 433 (Mich. Ct. App. 2022) ("The scope of an easement is determined by the language or express reservations of the grant." (cleaned up)). It purported to do so here in 1953, subject to certain terms and conditions, and it sought to enforce those terms and conditions by issuing the Notice in 2020. This lawsuit is an attempt by Enbridge to prevent the State from exercising its sovereign rights to limit the use and occupation of submerged lands held in public trust.

In *Coeur d'Alene*, the Supreme Court highlighted that Idaho state law provides that the submerged lands of Lake Coeur d'Alene belong to the state. *Id*. at 286–87. The same is true here. Under Michigan law, "the state holds both the *jus privatum* and *jus publicum* title to the submerged lands of the Great Lakes." *Glass*, 703 N.W.2d at 104 (Markman, J. concurring). And Michigan law must be "construed so as to preserve and protect the interests of the general public" in the "bottomlands . . . of the Great Lakes." Mich. Comp. Laws § 324.32502. In short, precisely the same special sovereignty interests at issue in *Coeur d'Alene* are threatened here. And yet the District Court held to the contrary, stating that "there is no similar interest at issue here." (Op. & Order, R. No. 95, Page ID # 946.) [5]

That is simply mistaken. This action seeks to curtail the State of Michigan's sovereign rights to limit the use and occupation of

_____

[5] In distinguishing *MacDonald*, the District Court noted that this Court's holding was not unanimous as to the applicability of *Coeur d'Alene*, with one Judge not joining that portion of the Opinion. (*Id*.) The District Court inaccurately described the majority opinion in *MacDonald* as a "plurality," and noted that the concurring opinion did not consider the issues related to the Eleventh Amendment and *Coeur d'Alene* to be sufficiently developed. (*Id*. at n. 3.) But the majority opinion in *MacDonald* is not a plurality, it is a binding, published majority opinion of this Court.

submerged lands and administer the public trust.  In effect, what Enbridge seeks is a permanent right to use and occupy those lands, regardless of whether it has violated the terms of the 1953 Easement contract or, indeed, whether it holds a valid easement at all.

The District Court also attached significance to Enbridge's argument that it does not seek the *exclusive* use or occupation of State-owned submerged lands.  (Op. & Order, R. 94, Page ID # 945.)  This is puzzling because, as a practical matter, that is exactly what Enbridge seeks.  No one else can use and occupy the submerged lands where Line 5 is located because there is a pipeline there.  If the State of Michigan was to grant an easement or issue a permit to someone else to build something on those same bottomlands, Enbridge would doubtlessly object.  As Justice O'Connor noted in the concurring opinion in *Coeur d'Alene*, unlike other types of land, a court order granting a plaintiff *possession* of submerged lands "would be indistinguishable from an order granting the [plaintiff] *title* to submerged lands." *Coeur d'Alene*, 521 U.S. at 291 (emphasis added).  That is certainly the case here, where an order enjoining the Michigan Officials from interfering with Enbridge's perpetual use and occupation of the

submerged lands at issue would effectively quiet title to an easement in Enbridge's favor.

This case clearly implicates Michigan's special sovereignty interests in its Great Lakes bottomlands. The District Court's holding to the contrary is an error that this Court should reverse.

## II. This action is barred by the Eleventh Amendment because it seeks to compel Michigan's specific performance of a contract, and therefore the State of Michigan is the real party in interest.

The Eleventh Amendment bars suit under *Ex parte Young* if "the things required by the decrees to be done and performed by [defendants] are the very things which, when done and performed, constitute a performance of the alleged contract by the state." *Hagood v. Southern*, 117 U.S. 52, 67 (1886); *see also In re Ayers*, 123 U.S. at 502; *Edelman*, 415 U.S. at 666–67 (1974). This is because, in such circumstances, "[t]he state is not only the real party to the controversy, but the real party against which relief is sought by the suit, and the suit is therefore substantially within the prohibition of the eleventh amendment to the constitution of the United States." *Hagood v. Southern*, 117 U.S. at 67.

The 1953 Easement is a contract between the State of Michigan and Enbridge's predecessor which purports to authorize the Grantee (now Enbridge) to "lay, maintain, use and operate" Line 5 on the submerged lands at issue. (1953 Easement, R. 1-1, Page ID # 44.) The 1953 Easement contract purports to convey this right to the Grantee and its successors and assigns "subject to the terms and conditions herein set forth, until terminated as hereinafter provided." (*Id*. at Page ID # 45.)

Here, Enbridge seeks an injunction against the State Officials who signed the Notice to prevent them from revoking and terminating the easement. (Compl., R. 1, Page ID # 19; Notice, R. 1-1, Page ID # 22–41.) In other words, Enbridge seeks an injunction that would compel the State to continue providing the benefits of the 1953 Easement to Enbridge. That is specific performance.

Enbridge does not dispute that an action cannot lie based on *Ex parte Young* to compel a state's specific performance of a contract. (Enbridge Br., R. 74, Page ID # 589.) Rather, Enbridge argues that it seeks an injunction that would prevent the State Officials from violating federal law, and this injunction "would *also* have the

incidental effect of preventing the state from violating the plaintiff's easement rights." (*Id*. (emphasis in original).)

Enbridge's argument makes no sense, to the point that it strains credulity. There is no federal law that allows Enbridge, or any other oil company, to construct and operate an oil pipeline on someone else's land without the landowner's permission. If that was the case, oil companies such as Enbridge would not need easements at all; they could simply trespass with impunity and lay pipelines on any property they choose.[6] This argument is a remarkable affront not only to the property rights of sovereigns such as states and Indian tribes, but also to private landowners—after all, if federal law allows Enbridge to operate its pipeline on state land and tribal land without permission, why could it (or any other pipeline company) not invade private land as well?

---

[6] Enbridge raised this same argument in the matter of *Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation v. Enbridge Energy Company, Inc., et al.*, 626 F. Supp. 3d 1030, 1039–40 (W.D. Wis. 2022). There, the U.S. District Court for the Western District of Wisconsin issued a pair of decisions rejecting Enbridge's virtually identical arguments that it may operate Line 5 on sovereign Indian Reservation land without a valid easement because any effort by the Band to eject it would be preempted by federal law. *Id*.; *Bad River Band*, No. 19-cv-602-wmc, 2022 WL 17249085 (W.D. Wis. Nov. 28, 2022).

As noted above, the action that gave rise to this case was the issuance of the Notice. There is no other act by the State Officials that Enbridge can point to that allegedly violates federal law. The only act by the Michigan Officials that Enbridge can claim to be an ongoing violation of federal law, subject to *Ex parte Young*, is the decision not to perform Michigan's obligations under the Easement contract to allow Enbridge to use and operate the dual pipelines on Michigan's submerged lands. This lawsuit, therefore, does not seek an order enjoining some *other* act that *incidentally* also happens to require specific performance of the 1953 Easement contract; the very nub of this action is the prayer for a declaration and injunction requiring specific performance of the 1953 Easement contract.

The District Court relied on *Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299 (1952) to support its holding that "the state is not the real party in interest here, and that that (sic) *Ex Parte Young* properly applies." (R. 94, Page ID # 947.) But *Redwine* is inapposite.

In *Redwine*, as the District Court noted, "a railroad sued to enjoin the enforcement of a new state law that purported to remove the railroads (sic) contractually based exemption from state taxation." (*Id*.)

While "[t]he district court described the case 'as one to enforce an alleged contract with the State of Georgia' and dismissed it for lack of jurisdiction . . . . The Supreme Court disagreed and held that the suit fell within the *Ex parte Young* exception even though the threatened taxation would 'impair the obligation of a contract.'" (*Id*. at Page ID # 947–48 (quoting *Redwine*, 342 U.S. at 304–05).)

But, in this case, Enbridge's contractual rights under the 1953 Easement are not merely "incidental" to the harm it alleges; rather, the *only* right that Enbridge asks the Court to enforce is its right of access to, and use and occupation of, the Straits bottomlands. And those rights only exist, if at all, pursuant to the 1953 Easement. There is no other state law or act by the State that Enbridge seeks to enjoin. This is an action to compel specific performance of that Easement contract, nothing more.

If the interpretation of *Redwine* offered by Enbridge and accepted by the District Court was correct, it would effectively eliminate the Eleventh Amendment's prohibition against suits brought in federal court to compel specific performance of a state contract. A party could sue one or more state officials and claim that the state's decision to not

47

to perform under the contract violates federal law. But *Redwine* does not extend that far, as evidenced by the fact that, in the seven decades since *Redwine*, the Supreme Court has repeatedly held that an action does not lie in federal court under *Ex parte Young* to compel a state's specific performance of a contract. *See, e.g.*, *Stewart*, 563 U.S. at 256–57 ("*Ex parte Young* cannot be used to obtain . . . an order for specific performance of a State's contract." (citing *Edelman*, 415 U.S. at 666–67; *In re Ayers*, 123 U.S. 443).)

The Third Circuit recently rejected a claim similar to Enbridge's in *Waterfront Commission of New York Harbor v. Murphy*, 961 F.3d 234 (3d Cir. 2020), *cert. denied*, 142 S. Ct. 561 (2021). There, the New Jersey legislature passed a statute allowing its governor to withdraw from an interstate compact with New York that empowered the Waterfront Commission of New York Harbor, a joint instrumentality of the two states, to oversee harbor business operations. *See id.* at 236–37. The Commission sued the New Jersey governor under *Ex parte Young* seeking to enjoin any withdrawal. *Id.* at 237.

The Third Circuit held that the requested injunction was "tantamount to specific performance [and] would operate against the

State itself, demonstrating that New Jersey is the real, substantial party in interest." *Id.* at 241. *Ex parte Young* could not be used to allow federal courts to "compel New Jersey to continue to abide by the terms of an agreement it has decided to renounce." *Id.*

Here, too, the act that Enbridge seeks to enjoin is the State of Michigan's decision to "renounce" the 1953 Easement contract. (Notice, R. 1-1, Page ID # 22 ("[T]he *State of Michigan* is formally notifying Enbridge that *the State* is revoking and terminating the 1953 Easement") (emphasis added).) Indeed, Enbridge's claims are even more closely tied to the contract at issue than the claims in *Redwine* and *Waterfront Commission* because here, unlike in those cases, there is no state statute or other act that Michigan seeks to enforce. Rather, the *only* act that Enbridge seeks to enjoin is Michigan's revocation and termination of the contract itself.

The District Court erred when it held that *Ex parte Young* authorizes a federal court to "compel [Michigan] to continue to abide by the terms of an agreement it has decided to renounce." *Waterfront Commission*, 961 F.3d at 241.

The District Court rejected *Waterfront Commission* on the grounds that it "is not binding on the Court, and does not consider *Redwine*." (Op. & Order, R. 94, Page ID # 949.) But the fact that *Waterfront Commission* does not consider *Redwine* is hardly surprising because, contrary to Enbridge's framing (referring to *Redwine* as the "leading case on the issue" of claims seeking specific performance under *Ex parte Young* (Enbridge Br., R. 74, Page ID # 589)), *Redwine* does not appear to be widely cited for that purpose at all.[7]

Enbridge comes to this federal forum to compel the State of Michigan to perform the terms of a contract (a decidedly state-law matter), and to allow Enbridge to permanently use and operate the dual pipelines on Michigan's submerged bottomlands (notwithstanding the express terms of the Easement contract or any other applicable

---

[7] This Circuit has cited *Redwine* in relation to *Ex parte Young* only once—and there only for the general rule that "[t]he law clearly recognizes the right of an interested party to force state officials to act in accordance with the Constitution." *Jordon v. Gilligan*, 500 F.2d 701, 705 (6th Cir. 1974). Indeed, the citing history of *Redwine* appears to be mostly for other purposes, and to be largely negative. Enbridge treads on novel ground in casting *Redwine* as widely known for announcing a rule about the "incidental" effect of an *Ex Parte Young* suit on state contract rights.

provision of Michigan law). The District Court's decision to exercise of jurisdiction over this case is an error that this Court should reverse.

## CONCLUSION AND RELIEF REQUESTED

Michigan's Eleventh Amendment sovereign immunity bars this action from proceeding in federal court, both because it is the functional equivalent of a quiet title action that would interfere with Michigan's special sovereign rights in submerged Great Lakes bottomlands, and because it would compel Michigan's specific performance of a contract. The District Court's decision to exert jurisdiction over this case is contrary to the clear and overwhelming weight of authority, and it constitutes an impermissible intrusion on Michigan's sovereign right, under the Eleventh Amendment, "to insist upon responding to these claims in its own courts, which are open to hear and determine the case." *Coeur d'Alene*, 521 U.S. at 287–88.

For these reasons, the Michigan Officials respectfully request that this Court reverse the District Court's July 5, 2024 Opinion and Order and order that this case be dismissed.

Respectfully submitted,


/s/ *Daniel P. Bock*
Daniel P. Bock
Keith D. Underkoffler
Assistant Attorneys General
Co-Counsel of Record
Attorneys for Defendants-
Appellants
Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
bockd@michigan.gov
underkofflerk@michigan.gov

Dated: October 16, 2024

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 13,000 words.  This document contains 10,457 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook.

/s/ *Daniel P. Bock*
Daniel P. Bock
Keith D. Underkoffler
Assistant Attorneys General
Co-Counsel of Record
Attorneys for Defendants-
Appellants
Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664

## CERTIFICATE OF SERVICE

I certify that on October 16, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

/s/ *Daniel P. Bock*
Daniel P. Bock
Keith D. Underkoffler
Assistant Attorneys General
Counsel of Record
Attorney for Defendants-
Appellants
Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendants-Appellants, per Sixth Circuit Rule 28(a), 28(a)(1)–(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Complaint | 11/24/2020 | R. 1 | 1–20 |
| 1953 Easement Contract | 11/24/2020 | R. 1-1 | 43–55 |
| Notice of Revocation and Termination | 11/24/2020 | R. 1-1 | 22–41 |
| Michigan Officials' Motion to Dismiss | 4/5/2022 | R. 62 | 322–323 |
| Michigan Officials' Brief in Support of Motion to Dismiss | 4/5/2022 | R. 63 | 324–349 |
| Enbridge's Response Brief | 4/6/2022 | R. 74 | 571–597 |
| Michigan Officials' Reply in Support of Motion to Dismiss | 4/6/2022 | R. 76 | 617–643 |
| Opinion and Order | 7/25/2024 | R. 94 | 940–950 |

Records from *Nessel v. Enbridge*, District Court case no. 1:21-cv-1057

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Notice of Removal | 12/15/2021 | R. 1 | 1–17 |

| | | | |
|---|---|---|---|
| Summons and Complaint | 12/15/2021 | R. 1-1 | 19–63 |
| Register of Actions | 1/14/2022 | R. 11-1 | 305–319 |
| Enbridge's Motion for Summary Disposition | 1/14/2022 | R. 11-2 | 321–398 |
| Hearing Transcript | 1/14/2022 | R. 11-4 | 402–508 |
| Enbridge's Supplemental Brief | 1/14/2022 | R. 11-5 | 510–541 |

Records from *Michigan v. Enbridge*, District Court case no. 1:20-cv-1142

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Summons and Complaint | 11/24/2020 | R. 1-1 | 16–107 |
| Notice of Removal | 11/24/2020 | R. 1-2 | 112–218 |
| Opinion and Order | 11/16/2021 | R. 80 | 1021–1035 |
| Notice of Voluntary Dismissal | 11/30/2021 | R. 83 | 1051 |