No. 24-1608

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ENBRIDGE ENERGY, LIMITED PARTNERSHIP; ENBRIDGE ENERGY COMPANY, INC.; and ENBRIDGE ENERGY PARTNERS, L.P.,
Plaintiffs-Appellees,

v.

GRETCHEN WHITMER, the Governor of the State of Michigan in her official capacity, and SCOTT BOWEN, Director of the Michigan Department of Natural Resources, in his official capacity,
Defendants-Appellants.

On Interlocutory Appeal from the United States District Court
Western District of Michigan, Southern Division
No. 1:20-001141 - RJJ
Honorable Robert J. Jonker

*AMICI CURIAE* FOR LOVE OF WATER AND GREAT LAKES BUSINESS NETWORK BRIEF IN SUPPORT OF DEFENDANT-APPELLANTS' PETITION FOR REHEARING OR REHEARING *EN BANC*

| | |
|---|---|
| James M. Olson<br>*Counsel of Record* | Andy Buchsbaum<br>*Counsel of Record* |
| FOR LOVE OF WATER<br>Olson & Howard, P.C.<br>520 S. Union Street<br>Traverse City, MI 49684<br>(231) 946-0044<br>olson@envlaw.com | GREAT LAKES BUSINESS NETWORK<br>Buchsbaum & Associates LLC<br>1715 David Court<br>Ann Arbor, MI 48105<br>(734) 717-3665<br>buchsbauma@gmail.com |

i

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. iii

**AMICUS BRIEF IN SUPPORT OF DEFENDANT-APPELLANTS' PETITION FOR REHEARING** ...................................................................... 8

   I.   The Panel's formulation of the "functional equivalent" quiet title test is incorrect and conflicts with other Sixth Circuit cases. .......................................... 9

   II.   The Panel failed to recognize that Enbridge's requested relief aims directly at the public trust doctrine, which is "special sovereign interest" that falls within the immunity shield of the Eleventh Amendment and *Coeur d'Alene*. ............... 13

   III.   Conclusion ................................................................................................ 14

**CERTIFICATE OF COMPLIANCE** ................................................................. 15

**CERTIFICATE OF SERVICE** ........................................................................... 16

...

# TABLE OF AUTHORITIES

**Cases**

*Barton v. Summers*, 293 F.3d 944 (6th Cir. 2002) ............................................. 7, 11

*Collins v. Gerhardt*, 211 N.W. 115 (Mich. 1926) ..................................................... 9

*Glass v. Goeckel*, 703 N.W.2d 58 (Mich. 2005) .................................................. 9, 13

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) ......................... passim

*Illinois Cent. R. Co. v. Illinois*, 146 U.S. 387 (1892) ..................................... 7, 8, 13

*Nedtweg v Wallace*, 208 N.W 51 (Mich. 1926) ........................................................ 9

*United States v. 1.58 Acres of Land*, 523 F. Supp. 120 (D. Mass. 1981) ................ 14

**Regulations**

33 C.F.R. § 165.944 ..................................................................................................... 3

**Other Authorities**

Dave Bartkowiak, Jr*., Michigan's Beer Industry Chugs Along: $9.9 Billion to State's Economy* ..................................................................................................... 4

Mich. Sea Grant, *The Dynamic Great Lakes Economy, Employment Trends from 2009 to 2018*, (Oct. 2020), https://www.michiganseagrant.org/wp-content/uploads/2020/10/MICHU-20-715-Great-Lakes-Jobs-Report-fact-sheet.pdf. ............................................................................................................... 4

U.S. Bureau of Economic Analysis, 2020 – Michigan, Outdoor Recreation Satellite Account (ORSA), https://outdoorindustry.org/wp-content/uploads/2015/03/ORSA-Michigan.pdf (last visited Feb. 10, 2022). ........ 4

## STATEMENT OF INTEREST OF AMICI CURIAE[1]

For Love of Water ("FLOW") is a Michigan non-profit law and policy center whose mission is "to ensure the waters of the Great Lakes Basin are healthy, public, and protected for all."[2] FLOW has expertise in Michigan's public trust doctrine and regularly advocates for the protection of the public's rights in and uses of navigable waters and submerged lands throughout the Great Lakes. The lakes are an extraordinary natural resource, containing 21 percent of all fresh surface water in the world and 84 percent of all fresh surface water in North America.[3] Located at the heart of this globally unique freshwater system, at the confluence of Lake Michigan and Lake Huron, are the Straits of Mackinac, where Enbridge's submerged and obsolete 72-year old dual pipelines transit up to 540,000 barrels of crude oil and natural gas liquids daily.[4] FLOW submits this brief in support of the Appellants' petition for rehearing *en banc* to inform the Court (1) about the State of Michigan's robust public trust rights and responsibilities protecting its sovereign interest and the

---

[1] No party or its counsel authored any part of this brief or contributed money to support its preparation or submission. No person other than FLOW or the Business Network contributed money to prepare or submit this brief. Neither party objects to the filing of this brief.

[2] *Mission, Vision & Operating Principles,* FLOW, https://forloveofwater.org/about-us/mission-and-goals/ (last visited May 6, 2025).

[3] *Great Lakes Facts and Figures*, U.S. EPA, https://www.epa.gov/greatlakes/great-lakes-facts-and-figures (last updated Nov. 2, 2023).

[4] *Overview*, MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY, https://www.michigan.gov/egle/about/featured/line5/overview (last visited May 6, 2025).

public rights of its citizens in their waters and submerged lands, and (2) the application of the U.S. Supreme Court's principles of state sovereign immunity announced in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), which bar Enbridge's federal court action. As a research and advocacy organization committed to protection of the precious water resources of the Great Lakes, FLOW brings a unique perspective to the questions for which Appellants seek rehearing *en banc*.

The Great Lakes Business Network is an unincorporated association of over 200 prominent businesses and business leaders in the Great Lakes region across a broad range of sectors, many of them leaders in their fields. The Business Network strives for "thriving ecosystems, economies, and communities" in the Great Lakes region.[5] The Network includes Patagonia, Cherry Republic, Bell's Brewery, Short's Brewing Company, Keweenaw Mountain Lodge, and Shepler's Ferry. Several, including Shepler's Ferry, are wholly dependent on Great Lakes navigation. Each member business depends on the reputation of the Great Lakes as healthy and beautiful.

The Business Network is deeply concerned about a looming rupture of Enbridge's failing Line 5 pipeline at the Straits of Mackinac. An oil spill would

---

[5] Great Lakes Bus. Network, *About Us: Mission* https://glbusinessnetwork.com/about-us/ (last visited Oct. 5, 2024).

gravely injure the businesses and communities that depend on Great Lakes water, recreation and navigation. The Network's member businesses rely on unimpaired navigation, from ferries to kayaks to freighters supplying goods, all of which would be decimated by an oil spill. Indeed, navigation is already hampered by measures the Coast Guard has needed to take to prevent ships' anchors from shearing Enbridge's exposed pipeline.[6] These businesses also rely on tourist-producing, public trust-protected recreation—swimming, fishing, boating, walking the beach—that would be destroyed by an oil spill. Thus, the Business Network supports Michigan's exercise of its public trust powers to put an end to that threat.

The Business Network's members are not alone in their dependence on the health and accessibility of the Great Lakes. In 2020, outdoor recreation in Michigan accounted for 108,673 jobs, with wages totaling $4.6 billion and $9.5 billion value added to the Michigan GDP.[7] In 2014, "over 113 million visitors spent over $22 billion in Michigan alone" visiting the Great Lakes.[8] The craft beer industry—in which many Business Network members participate and lead—supports 66,900 jobs

---

[6] U.S. Coast Guard Regulated Navigation Area; Straits of Mackinac, 83 Fed. Reg. 49283 (Oct. 1, 2018) (codified at 33 C.F.R. § 165.944).

[7] U.S. Bureau of Economic Analysis, 2020 – Michigan, Outdoor Recreation Satellite Account (ORSA), OUTDOOR INDUSTRY ASS'N., https://outdoorindustry.org/wp-content/uploads/2015/03/ORSA-Michigan.pdf.

[8] Mich. Sea Grant, *The Dynamic Great Lakes Economy, Employment Trends from 2009 to 2018*, (Oct. 2020), https://www.michiganseagrant.org/wp-content/uploads/2020/10/MICHU-20-715-Great-Lakes-Jobs-Report-fact-sheet.pdf.

in Michigan and contributes more than $9.9 billion to the state's economy.[9] A Michigan Technological University study concluded that a Line 5 rupture in the Straits could result in at least $1.878 billion in economic damages.[10] Like FLOW, the Business Network opposes Enbridge's litigation efforts to strip Michigan of its public trust rights and responsibilities to protect the ecological and economic health of the Great Lakes.

---

[9] Dave Bartkowiak, Jr., *Michigan's Beer Industry Chugs Along: $9.9 Billion to State's Economy,* Click on Detroit (July 9, 2021).

[10] *See* Mich. Tech. Inst., *Independent Risk Analysis for Straits Pipelines, Final* (Sept. 15, 2018), https://hazmaton.org/wp-content/uploads/2022/01/Straits_Independent_Risk_Analysis_Final-1-1.pdf

## AMICUS BRIEF IN SUPPORT OF DEFENDANT-APPELLANTS' PETITION FOR REHEARING

*Amici* FLOW and Great Lakes Business Network urge the Court to grant Appellants' ("Michigan Officials") petition to rehear their appeal and reconsider, *en banc*, the Court's April 23, 2025, decision ("Panel decision") that affirmed the district court's denial of Michigan Officials' motion to dismiss. The petition submitted by Michigan Officials points out several flaws in the Panel's assumptions and reasoning, and demonstrates the exceptional importance of the issues before the Court.

In this brief, *amici* express their support for the petition and comment briefly on two aspects of the Panel's decision that provide additional grounds for granting the petition. First, the Panel decision is inconsistent with prior decisions in the Circuit applying the *Ex Parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment sovereign immunity. The Panel employed an overly restrictive and unsupported test of sovereign interest that focuses too narrowly on property title, contrary to the principles announced in *Coeur d'Alene.* Second, the appeal presents a question of exceptional importance to the public, namely, whether Michigan's sovereign title in the submerged lands of Lake Michigan is inextricably bound to states' rights and duties under the long-standing public trust doctrine, such that Enbridge's federal action is, in effect, against the sovereign. If the Panel's decision is allowed to stand, then any private party seeking to derail a state's efforts to protect

public resources and the public's uses and rights therein will be able to do so by racing to the federal court for an injunction against state officials under the guise of some violation of federal law. This Court must refuse Enbridge's crass abuse of federal jurisdiction and uphold the public trust doctrine as a fundamental and inalienable attribute of state sovereignty, as established by the United States Supreme Court in *Illinois Cent. R. Co. v. Illinois*, 146 U.S. 387 (1892) and applied in *Coeur d'Alene*.

### I.   The Panel's formulation of the "functional equivalent" quiet title test is incorrect and conflicts with other Sixth Circuit cases.

In its opinion, the Panel correctly observed that the touchstone of the Supreme Court's decision in *Coeur d'Alene* was that the Tribe's lawsuit implicated a "special state sovereignty interest" relating to public trust submerged lands. But the Panel made a serious error in applying a narrow, formalistic requirement focused only on the title to the property. The Panel's narrowly constrained "quiet title" equivalency test is inconsistent with both the principles of sovereign immunity announced in *Coeur d'Alene* and an earlier decision of this Court that recognized that "special state sovereignty interests" sufficient to trigger state sovereign immunity are not limited to actions that are equivalent to quiet title. *See, e.g.*, *Barton v. Summers*, 293 F.3d 944, 947 (6th Cir. 2002).

The Panel rightly observed that the instant case is akin to *Coeur d'Alene* because it "implicates the State of Michigan's 'special sovereignty interests'" in the

9

submerged bottomlands of Lake Michigan at the Straits of Mackinac. Slip op. at 9. But the Panel then found, mistakenly, that the State's sovereign interest in the state-owned, submerged lands occupied by Enbridge is not special enough because the injunction sought by Enbridge did not to seek a formal divestment and transfer of legal title from the State to Enbridge. *Id*. at 9-10. According to the Panel, even if Enbridge is granted the sweeping relief that it seeks, no problem, the State would still retain of few formal "sticks in the bundle" of rights associated with property ownership, including right of alienation. *Id*. Nothing quite captures the extent of the Panel's fundamental misunderstanding of the State's sovereign interest in and public trust responsibilities for submerged lands at the Straits of Mackinac as the Panel's statement that "[t]he State seemingly could, for example, sell the disputed parcel subject to an encumbrance (that is, Enbridge's easement)." *Id*. at 9.

But in *Illinois Central,* the Supreme Court made crystal clear that submerged lands beneath navigable waters are held in public trust, are a special sovereignty interest of the state, and are not for sale. *See Illinois Cent. R. Co. v. Illinois*, 146 U.S. 387, 455 (1892) (observing that the public trust is an inalienable attribute of sovereignty and holding that a transfer of Lake Michigan submerged lands "is necessarily revocable and the exercise of the trust by which the property was held by the State can be resumed at any time"). The Michigan Supreme has robustly applied the public trust principles of *Illinois Central* to protect submerged lands. *See*

10

*Glass v. Goeckel*, 703 N.W.2d 58, 63-66 (Mich. 2005) (examining in detail the history of the public trust doctrine in Michigan and declaring that "the state, as sovereign, has an obligation to protect and preserve the waters of the Great Lakes and the lands beneath them for the public."); *Collins v. Gerhardt*, 211 N.W. 115, 118 (Mich. 1926) (holding that as sovereign the state holds title to and control of the waters and bottomlands of the Great Lakes within its boundaries in a "high, solemn, and perpetual trust, which is the duty of the state to forever maintain"); *Nedtweg v Wallace*, 208 N.W 51, 54 (Mich. 1926) ("The state is sovereign of the navigable waters within its boundaries, bound, however, in trust, to do nothing in hindrance of the public right of navigation, hunting and fishing."). For more than a century, Michigan case law in parallel with federal case law such as *Coeur d'Alene* clearly demonstrates the inseparability of the public trust doctrine and a state's sovereign title to public trust bottomlands, such as Lake Michigan.

A lawsuit against state officials that seeks to remove state lands from the protective shield of the public trust doctrine surely implicates a state sovereignty interest no less "special" than the sovereign interests at stake in *Coeur d'Alene*. Nothing in *Coeur d'Alene* suggests that the only sovereign interest special enough to be eligible for exception to *Ex parte Young* is bare title to sovereign lands, or that the only relief relevant to sovereign interest must be unambiguously describable as the functional equivalent of an action to quiet title. The Panel's overly narrow "quiet

11

title only" interpretation of *Coeur d'Alene* conflicts with at least one other decision of this Court, which recognized that relief barred by the Eleventh Amendment may implicate a "special state sovereignty interest" that has nothing to do with title to sovereign lands.

In *Barton v. Summers*, plaintiff Medicaid enrollees suffering from tobacco-related illnesses sought to intercept settlement money due the states under the Master Settlement Agreement between a number of settling states and tobacco manufacturers. 293 F.3d at 947. In affirming dismissal of the action as barred by the Eleventh Amendment, this Court held that under the principles announced in *Coeur d'Alene* such an action may be "barred if the relief sought is the functional *equivalent of relief otherwise barred* by the Eleventh Amendment and 'special sovereignty interests' are implicated." *Id*. at 951 (emphasis added). There, the Court found that plaintiffs' "attempt to force the allocation of state funds [to plaintiffs] implicate[d] core sovereign interests." *Id*. The plaintiff's action seeking diversion of settlement proceeds owed to Kentucky and Tennessee had nothing to do with title to sovereign lands, but was nonetheless barred under the *Coeur d'Alene* doctrine because it sought relief that implicated a "special state sovereignty interest." *Id*. And so it is here—Enbridge's action implicates Michigan's core sovereign interest in discharging its authority and responsibility under the State's public trust doctrine,

12

and the core sovereign interest of the State cannot be evaluated, as the Panel erroneously did, as a mere title contest.

**II.    The Panel failed to recognize that Enbridge's requested relief aims directly at the public trust doctrine, which is "special sovereign interest" that falls within the immunity shield of the Eleventh Amendment and *Coeur d'Alene*.**

If, as stated in *Coeur d'Alene*, sovereign immunity turns on the degree of intrusion into a core sovereign interest, then the intrusion wrought by Enbridge's federal court action is clearly "far reaching and invasive." *See Coeur d'Alene* at 282, 287. The Panel's declaration that no significant sovereign interests are impaired because the "State would still retain title to and ownership over the land" (slip op. at 9) is illusory. To the contrary, the injunctive relief Enbridge seeks would completely remove Enbridge's occupation and dangerous use of the Straits from the purview of the state's inalienable public trust authority. By seeking to separate and foreclose the operation of Michigan's public trust doctrine with respect to the Straits of Mackinac, Enbridge's federal court action is, in effect, an action against the sovereign that seeks relief barred by the Eleventh Amendment.

The Panel got it wrong in declaring that Enbridge's challenge to Defendants' exercise of the state's public trust rights and responsibilities protecting the Straits of Mackinac is not akin to the attack on state sovereignty and control over submerged lands at issue in *Coeur d'Alene*. To the contrary, no reasonable construction of Enbridge's complaint exists that does not implicate an immediate and substantial

13

impact on Michigan's jurisdictional and sovereign control over its public trust submerged lands occupied by Enbridge. The Panel concluded otherwise only because it isolated the state's bare title from the state's public trust rights and responsibilities. But this strained and unnatural separation of sovereign title from the public trust cannot be squared with the leading federal and state court decisions establishing the public trust doctrine together with sovereign title as an essential attribute of state sovereignty. *See Illinois Cent.*, 146 U.S. at 452-455; *Glass v. Goeckel*, 703 N.W.2d 58, 63-66 (Mich. 2005). As one federal court put it, the public trust "can only be destroyed by the destruction of the sovereign" itself. *United States v. 1.58 Acres of Land*, 523 F. Supp. 120, 124 (D. Mass. 1981).

This Court should reject Enbridge's resort to the federal judiciary for an injunction that would forever isolate from state jurisdiction and control submerged lands historically held by the courts to be the sovereign responsibility of the states. Since Enbridge's lawsuit attacks an essential attribute of state sovereignty, it is in effect an action against the State. As such, it falls squarely within the exception to the *Ex parte Young* doctrine announced in *Coeur d'Alene* and must be dismissed.

### III. Conclusion

The Panel's erroneous decision conflicts with prior decisions of this Court. Also, the decision addresses an issue of exceptional importance to the public. For these reasons, and the reasons stated in the Michigan Officials' petition for

rehearing, *amici* For Love of Water and the Great Lakes Business Network support the petition and urge this Court to rehear the appeal *en banc*.

          Respectfully submitted,

          /s/ James M. Olson

          _____
          James M. Olson (P18485)
          *Counsel of Record for*
          *FOR LOVE OF WATER*
          OLSON & HOWARD, PC
          520 S. Union Street
          Traverse City, MI 49684
          (231) 946-0044
          olson@envlaw.com

          /s/ Andy Buchsbaum

          _____
          Andy Buchsbaum (P39620)
          *Counsel of Record for*
          *GREAT LAKES BUSINESS NETWORK*
          BUCHSBAUM & ASSOCIATES LLC
          1715 David Court
          Ann Arbor, MI 48105
          (734) 717-3665
          buchsbauma@gmail.com

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the word count limit of FRAP 29(5). This brief was written using Microsoft Word version Office 365 and has a word count of 2,575 words.

2. This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) and was prepared using 14-point Times New Roman, a proportionally spaced font.

Respectfully submitted,

/s/ James M. Olson

_____
James M. Olson (P18485)
*Counsel of Record for*
*FOR LOVE OF WATER*
OLSON & HOWARD, PC
520 S. Union Street
Traverse City, MI 49684
(231) 946-0044
olson@envlaw.com

/s/ Andy Buchsbaum

_____
Andy Buchsbaum (P39620)
*Counsel of Record for*
*GREAT LAKES BUSINESS NETWORK*
BUCHSBAUM & ASSOCIATES LLC
1715 David Court
Ann Arbor, MI 48105
(734) 717-3665
buchsbauma@gmail.com

## CERTIFICATE OF SERVICE

I certify that on May 28, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

Respectfully submitted,

/s/ James M. Olson

_____

James M. Olson (P18485)
*Counsel of Record for*
*FOR LOVE OF WATER*
OLSON & HOWARD, PC
520 S. Union Street
Traverse City, MI 49684
(231) 946-0044
olson@envlaw.com

/s/ Andy Buchsbaum

_____

Andy Buchsbaum (P39620)
*Counsel of Record for*
*GREAT LAKES BUSINESS NETWORK*
BUCHSBAUM & ASSOCIATES LLC
1715 David Court
Ann Arbor, MI 48105
(734) 717-3665
buchsbauma@gmail.com